# GRAND TRUNK WESTERN RAILWAY COMPANY v. CITY OF SOUTH BEND.

## ERROR TO THE SUPREME COURT OF THE STATE OF INDIANA.

No. 81. Argued December 10, 11, 1912.—Decided February 24, 1913.

What the contract alleged to be impaired by subsequent legislation is, is a question which this court is bound to determine for itself independent of decisions of the state court. *Northern Pacific Ry.* v. *Duluth*, 208 U. S. 590.

An ordinance conferring a street franchise, passed by a municipality under legislative authority, creates a valid contract binding and enforceable according to its terms. *Louisville* v. *Cumberland Telephone Co.*, 225 U. S. 430.

While a validly granted franchise to use streets of a municipality may be regulated as to its use by subsequent ordinances, or repealed if its operation becomes injurious to public health or morals, the franchise, if not injurious to public health or morals, cannot be repealed and destroyed.

The police power of the State cannot be bartered away; but it cannot be used to abrogate a valid and innocuous franchise.

Tracks laid in a street under legislative authority become legalized, and when used in the customary manner cannot be treated as unlawful either in maintenance or operation.

Inconvenience natural to the proper use of a properly granted franchise cannot be made the basis of exercising the police power to destroy the franchise.

The power to regulate implies the existence and not the destruction of the thing to be controlled.

A franchise to maintain and operate a double track railway is an entirety, and if valid the municipality cannot abrogate it as to one of the tracks, either as to all or as to a part of the distance for which it was granted. *Baltimore* v. *Trust Company*, 166 U. S. 673, distinguished.

The contract clause prevents a State from impairing the obligation of a contract, whether it acts through the legislature or a municipality exercising delegated legislative power.

The ordinance of South Bend, Indiana, of 1868, permitting a railway company to lay a double track through one of its streets, and which had been availed of as to part of the distance, was a valid exercise of

delegated legislative power, and no power to alter or repeal having been reserved, a subsequent ordinance repealing the franchise as to the double track was not a valid exercise of the police power to regulate the franchise, but an impairment of the contract and unconstitutional under the contract clause of the Constitution.

174 Indiana, 203, reversed.

In 1866 a charter was granted by the State of Indiana to plaintiff's predecessor in title whereby it was authorized to build a railroad from the Michigan line west through South Bend to the Illinois line in the direction of Chicago. The City of South Bend was a stockholder in this company and, in 1868, passed an ordinance granting the company the right to construct its railroad through the streets of the city, no more than one track to be laid, except that the privilege was granted to lay a double track along Division street from the Bridge over St. Joseph's River to Taylor street. The road was constructed and a single track was built in 1871.

Thereafter, in 1881, the company acquired by condemnation and purchase, from the abutting owners on Division street, the right to use a strip 18 feet in width on which to lay a double track and soon afterward constructed the same on Division street for about half the permitted distance. This double track was constantly used, and in 1901 the business of the company had so increased that it was necessary to double-track the entire line, and the company had so built 157 miles from Port Huron westward and was preparing to construct the balance of the double track on Division street, when the city, on October 14, 1901, repealed so much of the ordinance of 1868 as gave the right to a second track in Division street. Later when the work of construction was begun the mayor ordered the employés to desist and threatened to arrest any who should undertake to construct such double track.

The company thereupon filed a bill, asking that the city be enjoined from interfering with the building of the

balance of the double track. It alleged that the city was a stockholder in the original company and in one of the successors, and knew of the acquisition of the 18-foot strip in Division street; that at all times it had recognized the validity of the contract as an entirety and from time to time required the railroad to incur expenses called for thereunder, and was estopped from denying the validity of the double track privilege.

The bill alleges that when the ordinance of 1868 was passed it was understood the double track could be laid whenever the business of the company made it necessary; that in consequence of the increase of business it is now essential to the successful operation of plaintiff's freight and passenger business that it should maintain a second track in Division street as by said ordinance authorized; and that to facilitate and accommodate the present volume of such traffic, said double line "is particularly necessary because of the fact that plaintiff's freight and passenger stations in South Bend are located adjacent to Division Street, between St. Joseph's River bridge and General Taylor street, and at said station the trains, both passenger and freight, passing over plaintiff's road, have to stop for train orders. The obstructing of the general public in the use of said street by passing trains will be much less when two tracks are used than it now is, when all trains, both ways, have to pass over a single track; that said street is $82\frac{1}{2}$ feet wide and that there is ample room thereon for general travel and for said double track."

The plaintiff claims that the "original Ordinance of 1866 constituted a contract in its entirety, . . . is irrepealable by said city either in whole or in part, and that said Ordinance of repeal is void as violative of said contract and plaintiff's right thereunder as being in conflict with Section 10 of Article I of the Constitution of the United States."

The city demurred. Later it withdrew the demurrer

and filed an answer. Subsequently it withdrew the answer
and filed a general demurrer, which was sustained by the
Circuit Court. On appeal the Supreme Court of Indiana
held that there was no charge that the city proposed to
remove the double track already laid, and that the plead-
ings, properly construed, only involved the right to con-
struct the balance of the double track; that even if the
Ordinance of 1866 was a contract it did not prevent the
city from exercising the police power, and affirmed the
judgment. (174 Indiana, 203.)

*Mr. George W. Kretzinger, Jr.,* and *Mr. A. B. Browne,*
with whom *Mr. George W. Kretzinger* was on the brief,
for plaintiff in error.

*Mr. Harry R. Wair,* with whom *Mr. Iden S. Romig* and
*Mr. Louis T. Michener* were on the brief, for defendants in
error:

The City of South Bend had the power to repeal and
set aside the grant of the right to lay down the additional
track on Division street between Michigan and Taylor
streets. Ordinance 62 is not an irrepealable contract.

Facts in pleadings must be positively averred and not
set out by way of recital, inference or conclusion, and no
facts will be presumed to exist in favor of a pleading which
have not been averred or alleged. *Wabash R. R. Co. v.
Beedle,* 173 Indiana, 437; *Wabash R. R. Co. v. Hasset,* 170
Indiana, 370; *Chicago & Erie R. R. Co. v. Lain,* 170
Indiana, 84, 90.

Whether the grant is a license or a contract, it is subject
to the police power of the municipality.

The mere fact that plaintiff in error enjoys contract
rights in the street is not controlling. Those who enter
into such contract relations with the city as render their
property reasonably subject to control do so with the
knowledge that the police power is an inalienable and con-

tinuing authority in the city. *Indiana Ry. Co.* v. *Calvert,* 168 Indiana, 321; *Baltimore* v. *Guaranty Co.,* 166 U. S. 673; *Vandalia R. R. Co.* v. *State,* 166 Indiana, 219.

When a state court has construed a statute this court will accept that construction, and the power of determining the meaning of a statute carries with it the power to describe its extent and limitation as well as a method by which they shall be determined. *Smiley* v. *Kansas,* 196 U. S. 447–455; *Martin* v. *West,* 222 U. S. 196; *Chicago* v. *Sturges,* 224 U. S. 321; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 73; *Chamber of Commerce* v. *Boston,* 217 U. S. 194; *Gatewood* v. *North Carolina,* 203 U. S. 541.

The repealing ordinance was a proper exercise of the police power; the power of legislating for the protection of the public in the streets of the city is held by the city council in trust, and cannot be the subject of an irrevocable contract; a city council cannot limit its legislative discretion in the future by contract or grant so as to deprive itself of its police power; the power of regulation and control of streets is a continuing power to be exercised at all times for public benefit. *Vandalia R. R. Co.* v. *South Bend,* 166 Indiana, 219; *Indiana Ry. Co.* v. *Calvert,* 168 Indiana, 321; *Laurel Hill Cemetery* v. *San Francisco,* 216 U. S. 358, 365; *Peru* v. *Gleason,* 91 Indiana, 567; *Lake Roland Elevated Ry. Co.* v. *Baltimore,* 26 Atl. Rep. 510; *Baltimore* v. *Baltimore Trust Co.,* 166 U. S. 673; *Wabash Ry. Co.* v. *Defiance,* 167 U. S. 88; *C., B. & Q. Ry. Co.* v. *Nebraska,* 170 U. S. 57; *N. Y. & N. E. Ry. Co.* v. *Bristol,* 151 U. S. 556; *Board of Education* v. *Phillips,* 73 Pac. Rep. 97; *Snouffer* v. *Cedar Rapids Ry.,* 92 N. W. Rep. 79; *Clarendon* v. *Rutland Ry. Co.,* 52 Atl. Rep. 1057; *Thorpe* v. *Railway,* 27 Vermont, 141; *Binninger* v. *New York,* 69 N. E. Rep. 390; *Presbyterian Church* v. *New York,* 5 Cow. 542.

The police power is but another name for the power of government and legislation and cannot be judged by theoretical standards but must be tested by the concrete

conditions which induced it, and this court will not oppose to legislation under the police power its notions of its necessity for such legislation in determining whether the legislation is arbitrary and unreasonable and not designed to accomplish a legitimate public purpose. *Mutual Loan Co.* v. *Martell*, 222 U. S. 232–234; *Laurel Hill Cemetery Co.* v. *San Francisco*, 216 U. S. 358, 365.

Whether such an ordinance is a license or a contract, the real question is: is it repealable? Where privileges are given to a private corporation and subsequent regulation attempted is purely a matter of private concern, the facts come within the *Dartmouth College* doctrine, but this doctrine does not apply to the public contracts or charter legislation of municipalities, which are more in the nature of licenses and not irrepealable contracts. Ordinance No. 62 is not in the class of contracts which a municipality makes as a property holder, but was an exercise by the city of its delegated legislative powers. *Vandalia R. R. Co.* v. *South Bend*, 166 Indiana, 219; *Indiana Ry. Co.* v. *Calvert*, 168 Indiana, 321; *Indianapolis &c. R. R. Co.* v. *State*, 37 Indiana, 489; *Meyer* v. *Boonville*, 162 Indiana, 165; *Wabash Ry. Co.* v. *Defiance*, 167 U. S. 88; *Binninger* v. *City of New York*, 69 N. E. Rep. 390; *Lake Roland Elevated* v. *Baltimore*, 26 Atl. Rep. 510; *Snouffer* v. *Cedar Rapids Ry.*, 92 N. W. Rep. 79, at 83; *Logansport Ry. Co.* v. *Logansport*, 114 Fed. Rep. 688; *Citizens' Ry. Co.* v. *City Co.*, 64 Fed. Rep. 647; *Citizens' Co.* v. *City Co.*, 56 Fed. Rep. 746.

Neither the condition of the title of the plaintiff in error nor its relations with abutting property owners is important. If the repealing ordinance of 1901 is a valid exercise of the police power, it matters not whether plaintiff in error is deprived of the benefit of an easement, a privilege, a contract, or a license. Black's Const. Law, pp. 290, 293, 298; *Clarendon* v. *Rutland Ry. Co.*, 52 Atl. Rep. 1057.

The railroad company's complaint shows on its face that the privilege of laying a double track on Division street between Michigan and General Taylor Streets was never exercised. The repealing ordinance of 1901, if void, is void only on the ground that it is not a proper exercise of the police power.

The repealing ordinance of 1901 is not based upon non-user. Power is sometimes reserved to alter, amend or repeal grants, but the police power also necessarily extends to grants which do not contain any express reservation. *Gale* v. *Kalamazoo*, 23 Michigan, 343.

The repealing ordinance of 1901 concerns not only the use of the street for convenience of public travel, but also the protection of human life. Subjects of much less importance have properly been held to be within the scope of the police power. *International Text Book Co.* v. *Weissinger*, 160 Indiana, 349; *Fry* v. *State*, 63 Indiana, 552; *Adams Exp. Co.* v. *State*, 161 Indiana, 328; *Given* v. *State*, 160 Indiana, 552; *Stone* v. *Mississippi*, 101 U. S. 814; *State* v. *Woodward*, 89 Indiana, 110; *Barbier* v. *Connolly*, 113 U. S. 27; *Gaslight Co.* v. *Columbus*, 33 N. E. Rep. 292; *Slaughter House Cases*, 16 Wall. 36.

An estoppel may be raised against a private corporation even when it has not the power to act, but no estoppel can be raised against a public corporation. *St. Paul* v. *Minnesota Transfer Co.*, 80 Minnesota, 108; 83 N. W. Rep. 32; *Rissing* v. *Fort Wayne*, 137 Indiana, 427.

Neither the question of estoppel nor the question of laches, when raised in the state court, present or involve a Federal question. *Speed* v. *McCarthy*, 181 U. S. 269, 275; *Moran* v. *Horsky*, 178 U. S. 205.

This court will take judicial notice that every additional track placed longitudinally along the streets and crossing intersecting streets increases the danger of the public and inconvenience to travel. 1 Elliott on Evidence, §§ 39, 42 and 62.

The court will also take judicial notice of the population

of the City of South Bend as shown by the United States census since its incorporation as follows:

Population in 1850........ 1,652.
Population in 1910.......53,684.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

In 1868 the City Council of South Bend, by ordinance, granted plaintiff's predecessor in title the right to lay a double track over a part of Division street. The Company built a single track in 1871 and a double track for part of the way in 1881, but, on attempting in 1902 to extend it, for the balance of the authorized distance, was prevented from doing so because the city had repealed so much of the ordinance of 1868 as related to double tracks. In the record here it appears that, in the litigation which followed, the action of the city was sustained on the ground that the repeal was presumptively a reasonable exercise of the police power and not a legislative impairment of the contract ordinance.

The assignment of error on this ruling presents a question which this court is bound to decide for itself, independent of decisions of the State court, *Northern Pacific Ry.* v. *Duluth,* 208 U. S. 583, 590. In doing so it is necessary first to determine whether the city had legislative authority to pass the ordinance, for,-if there was no such power, the grant was void and the repeal was not so much the impairment of the obligation of a contract as the withdrawal of an assent to occupy the streets.

We are, however, relieved of the necessity of making any extended inquiry on this primary question, because the Indiana statute provided that the railroad might be built through any city that would give its consent. In a suit by an abutting owner, the Supreme Court of the State, construing this very ordinance of 1868, held that

the city had power to pass it, "the laying out and operating of the railway being a new and improved method of using the streets germane to its principal object." *Dwenger* v. *Chicago & Grand Trunk Ry. Co.*, 98 Indiana, 153. In other cases that court held that the statute authorized cities to grant franchises to lay tracks in the streets; that such an ordinance created that which is in the nature of a contract "which the municipality itself cannot materially impair." *Williams* v. *Citizens' Ry.*, 130 Indiana, 71, 73; *Town of New Castle* v. *Lake Erie & W. R. Co.*, 155 Indiana, 18, 24. These rulings accord with the decisions in other jurisdictions and by this court in *Louisville* v. *Cumberland Telephone Company*, 225 U. S. 430, holding that an ordinance conferring a street franchise, passed by a municipality under legislative authority, created a valid contract binding and enforceable according to its terms.

2. If, then, the City of South Bend was authorized to pass this ordinance which granted an easement, the contract cannot be impaired unless, as claimed by the defendant, the railroad took subject to a right to amend or repeal in the exercise of the police power. And many cases are cited in support of the proposition that the grant of authority to use the streets of a city does not prevent the subsequent passage of ordinances needed for the preservation of the public safety and convenience. Some of the cases turned on the question as to the city's want of legislative power to make the grant in the first instance. Others held that charter grants did not prevent the State from subsequently repealing franchises which in their operation were injurious to the morals or health of the public, as in the *Lottery, Liquor* and *Fertilizer* cases. *Stone* v. *Mississippi*, 101 U. S. 814; *Boston Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Northwestern Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659. Others related to the change of paving, grade and location of viaducts. All of them recognize the municipality's control of the use of the streets by travellers

on foot or in vehicles, as well as the use by companies which have a franchise to lay tracks over which to haul cars.

Undoubtedly the railroad here took no vested interest in the maintenance of the laws or regulations of force when the ordinance was passed in 1868, but the rights acquired were subject to the power of the municipality to pass reasonable regulations necessary to secure the public safety. *Northern Pac. R. R.* v. *Duluth,* 208 U. S. 583. And while the franchise to lay and use a double track was a contract which could not be impaired, yet, as the police power remained efficient and operative, the municipality had ample authority to make regulations necessitating changes of a nature which could not have been compelled if the grant had been from it as a private proprietor. The city could, therefore, legislate as to crossings, grades, character of rails, rate of speed, giving of signals and the details of operating track and train, regulating the use of the franchise, and preserving the concurrent rights of the public and the company. And, as in the viaduct cases, it might require these tracks to be lowered or elevated (*Chicago, B. & Q. R. R.* v. *Nebraska,* 170 U. S. 57), or,—the franchise, and not the particular location, being the essence of the contract, the city, under the power to regulate, might compel the company to remove the tracks from the center to the side, or from the side to the center of the street. *New Orleans Gas Light Co.* v. *Drainage Commission,* 197 U. S. 453; *Macon &c. R. R.* v. *Mayor,* 112 Georgia, 782; *Atlantic & B. Ry.* v. *Cordele,* 128 Georgia, 293, 296; *Snouffer* v. *Cedar Rapids & M. C. Ry. Co.,* 118 Iowa, 287 (5).

These, however, are examples of the persistence of the power to regulate and do not sustain the validity of the repealing ordinance of 1901, since it is not regulative of the use but destructive of the franchise. In every case like this involving an inquiry as to whether a law is valid, as an exertion of the police power, or void, as impairing

the obligation of a contract, the determination must depend on the nature of the contract and the right of government to make it. The difference between the two classes of cases is that which results from the want of authority to barter away the police power, whose continued existence is essential to the well-being of society, and the undoubted right of government to contract as to some matters and the want of power, when such contract is made, to destroy or impair its obligation. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650.

The State, with its plenary control over the streets, had this governmental power to make the grant. There was nothing contrary to public policy in any of its terms, and being valid and innocuous, the police power could not be invoked to abrogate it as a whole or to impair it in part. *Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 1, 17. Tracks laid in a street, under legislative authority, become legalized, and, when used in the customary manner, cannot be treated as unlawful either in maintenance or operation. As said by this court, "a railway over the . . . streets of the city of Washington, may be authorized by Congress, and if, when used with reasonable care, it produces only that incidental inconvenience which unavoidably follows the additional occupation of the streets by its cars with the noises and disturbances necessarily attending their use, no one can complain that he is incommoded." *Baltimore & Potomac R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317, 331. The inconvenience consequent upon the running of a railroad through a city, under state authority, is not a nuisance in law, but is insuperably connected with the exercise of the franchise granted by the State. If the police power could lay hold of such inconveniences, and make them the basis of the right to repeal such an ordinance, the contract could be abrogated because of the very growth in population and business the railroad was intended to secure.

The power to regulate implies the existence and not the destruction of the thing to be controlled. And while the city retained the power to regulate the streets and the use of the franchise, it could neither destroy the public use nor impair the private contract, which, as it contemplated permanent and not temporary structures, granted a permanent and not a revocable franchise. Both the street and the railroad were arteries of commerce. Both were highways of public utility, and both were laid out subject to the authority of the State, though the power to regulate the use of the streets has been delegated to the municipality. So that while the company was itself authorized to select the route between the terminal points named in the charter, it could not use streets without the consent of the city through which the line ran. In determining whether they would grant or refuse that consent the municipal authorities were obliged to balance the present and prospective inconveniences of having trains operated through its streets against the advantage of having the railroad accessible to its citizens. It could have refused its consent, except on terms; it could have forced the road to the outskirts of the town, or could have permitted the company to lay tracks in the more thickly settled parts of the city. When such consent was once given the condition precedent had been performed and the street franchise was thereafter held, not from the city, but from the State which, however, did not confer upon the municipality any authority to withdraw that consent, nor was there any attempt by the council to reserve such power in the ordinance itself.

It is said, however, that even if the city could not prevent the use of the rails already laid, it could repeal so much of the ordinance as related to that part of the street on which the double track had not been actually built. But this was not a grant of several distinct and separate franchises, where the acceptance and use of one did not.

necessarily execute the contract as to others not connected with the main object of the ordinance and not at the time directly within the contemplation of the parties. *Pearsall v. Great Northern R. R.*, 161 U. S. 646, 673. This franchise was single and specific, and when accepted and acted upon became binding,—not foot by foot, as the rails were laid—but as an entirety. Here the company not only accepted the ordinance and constructed the road, but, relying on the franchise, acquired from the abutters by purchase or condemnation an 18-foot strip with a view of laying thereon a double track as the increase in business made that necessary. Subsequently it built the double track for a part of the distance and has not abandoned or forfeited the right to use the balance of the easement when needed for the discharge of its public duties as a carrier.

The ordinance passed in pursuance of the Indiana statute was an entirety. When accepted it became binding in its entirety. If the city has the right to repeal the specific provisions of the contract, it has the like right to repeal the more general grant to lay a single track. If South Bend can do so, every other municipality having granted like rights, under similar ordinances, and affecting every line of railway in the country, can repeal the franchise to use double or single track. On the ground of congestion of traffic, the State's grant and command to operate a continuous road could be nullified by municipal action, to the destruction of great highways of commerce, similar in their nature to the street itself. Such consequences, though improbable, are rendered impossible by the provision of the Constitution of the United States prohibiting the impairment of the obligation of a contract by legislation of a State, whether acting through a General Assembly or a municipality exercising delegated legislative power. *Mercantile Trust Company v. Columbus*, 203 U. S. 311, 320; *New Orleans Gas Co. v. Louisiana Light Co.*, 115 U. S. 650; *City Ry. Co. v. Citizens' R. R.*, 166 U. S. 557.

See also *Hestonville &c. R. R.* v. *Philadelphia*, 89 Pa. St. 210 (3); *Suburban R. T. Co.* v. *Mayor*, 128 N. Y. 510, 520; *Asbury Park Ry.* v. *Neptune Township*, 73 N. J. Eq. 323, 329–332; *Brunswick & Western R. R. Co.* v. *Mayor*, 91 Georgia, 573; *Workman* v. *R. R.*, 129 California, 536; *Africa* v. *Knoxville*, 70 Fed. Rep. 729; *Burlington* v. *Burlington S. R. R.*, 49 Iowa, 144; *Town of Arcata* v. *Arcata & M. R. R. Co.*, 92 California, 639; *Detroit* v. *Detroit & H. P. R. R. Co.*, 43 Michigan, 140, 147; *City of Seattle* v. *Columbia & P. S. R. R.*, 6 Washington, 379; *City of Noblesville* v. *Lake Erie & W. R. R.*, 130 Indiana, 1. "Obviously, upon the clearest considerations of law and justice, the grant of authority to defendant when accepted and acted upon, became an irrevocable contract, and the city is powerless to set it aside." *St. Louis* v. *Western Union Telegraph Co.*, 148 U. S. 92, 103.

The defendant relies on *Baltimore* v. *Baltimore Trust & G. Co.*, 166 U. S. 673, where, however, the facts were materially different. For there the company had a sweeping grant to lay double tracks through many miles of the streets. The city repealed the ordinance so far as it related to a short distance in a crowded part of Lexington street, which, as appears in the original record, varied from 48 to 50 feet in width, the sidewalks being about eleven feet in width and the roadway proper being about 29 feet from curb to curb. With double tracks, there was only 7½ feet from the curb to the nearest rail, and, allowing for the overhang of the car, this space was not wide enough to permit vans and large wagons to pass. At some points buggies and narrow vehicles could only pass by running the wheels on the edge of the sidewalk. These facts are wholly different from the situation disclosed by this record, where the sweeping grant conferred the right to lay a single track, but the specific grant "immediately within the contemplation of the parties" (*Pearsall* v. *Great Northern Ry.*, 161 U. S. 646, 673) was a definite franchise

to construct this particular double track between designated points, on Division street, which is 82½ feet wide, or 32 feet wider than Lexington street. It is admitted that a double track has been actually used on it for more than 20 years.

The statute and the ordinance, in the Baltimore Case, were also materially different from those here involved. The court declined to decide whether the council had the power to make an irrepealable contract, it being sufficient to hold that the direction to lay but one track for a short distance on Lexington street did not substantially change the terms of the contract, granting such very broad and general right to lay many miles of double track throughout the city. But regardless of the construction there was no impairment, because of the important fact that the legislature of Maryland had ratified the street ordinance on condition that it might at any time be amended or repealed by the city council.

That decision, based on such different facts and on such different statute and ordinance, is not applicable here where the city of South Bend sought to repeal a part of a street franchise granted in pursuance of a state statute which, while it authorized the city to consent, reserved to it no such power to repeal. As said in *Indianapolis* v. *Indianapolis Gas Co.*, 66 Indiana, 396, 402, such a contract ordinance "does not in the least restrict the legislative powers of the city except, as the sanctity of the contract is shielded by the Constitution of the United States, it cannot in the exercise of its legislative power impair its validity; for it would be a solecism to hold that a municipal corporation can impair the validity of a contract, when the State which created the corporation, by its most solemn acts, has no such power."

The facts stated in the complaint, and admitted by the demurrer, raise no presumption that the repeal was the reasonable exercise of the police power, but on the con-

trary show that the contract of 1868 was materially impaired by the ordinance of 1901 in violation of the provisions of Art. I, § 10, of the Constitution.

*The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE DAY concurs in the result on the ground that the facts stated in the complaint and admitted by the demurrer raise no presumption that the repeal was the reasonable exercise of the police power and that nothing else is necessary to be decided. MR. JUSTICE HUGHES and Mr. JUSTICE PITNEY dissent.